UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA CALMBACHER,

    Plaintiff,

v.                                                      CASE NO: 8:04-cv-2639-T-26TBM

PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

    Defendant.
_____/

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 25), Defendant's Statement of Undisputed Facts (Dkt. 23), Plaintiff's claim file, or the administrative record (Dkt. 22),[1] and Plaintiff's Memorandum in Opposition. (Dkt. 28). After careful consideration of the arguments made and the file, the Court concludes that summary judgment should be denied.

**Background**

This is an action brought pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., for the denial of additional long term disability (LTD) benefits beyond the 24-month benefit limitation under the mental/nervous provision of the LTD policy. Plaintiff's employer, Xerox Corporation (Xerox), was

---

[1] This Court permitted the filing of the administrative record in paper format.

insured by The Prudential Insurance Company of America (Prudential). The parties do not agree whether the Plan documents grant the express discretion to Prudential to make decisions on LTD benefits, and therefore disagree as to the correct standard to be applied.

Plaintiff had worked as a salesperson for Xerox for eighteen years at the time of her disability on August 17, 2001. On August 17, 2001, due to numerous medical conditions in addition to the suicide of her daughter the day before, she became disabled. The numerous medical conditions include fibromyalgia, degenerative joint disease, chronic fatigue syndrome, cervical radiculopathy, carpal tunnel syndrome, hypothyroidism, and respiratory ailments due to recurrent pulmonary emboli. Prudential, nevertheless, found that LTD benefits based on conditions other than the mental condition of depression could not be justified. Prudential found that Plaintiff was capable of performing sedentary, light-duty work.

After Plaintiff appealed the denial of LTD benefits beyond the 24-month limitation and after two independent file reviews by Prudential's physicians, Prudential upheld its decision that Plaintiff's physical symptoms other than depression existed prior to the depression and were merely exacerbated by the severe depression. Thus, the mental illness limitation clause applied to cut off benefits after twenty-four months. Plaintiff contends that her physical ailments apart from her depression make her eligible for LTD payments without limitation.

**The Policy**

Prudential issued to Xerox, the Contract Holder, an LTD plan and policy (the Policy) for its employees. (Dkt. 22 at 1-51). The Policy is referred to as the "Booklet," which describes the program of benefits, the Certificate of Coverage, and all endorsements and amendments, which all together constitute the Group Insurance Certificate. (Dkt. 22 at 1-51). A "covered employee" is totally disabled under the Policy if "[d]ue to sickness[2] or an accidental injury, [the employee is] not able to perform . . . the material and substantial duties of *any* gainful occupation for which [the employee is] reasonably fitted by [the employee's] education, training or experience." (Dkt. 22 at 12) (emphasis added). A "gainful occupation" means an occupation that produces an income "at least equal to 60%" of the employee's pre-disability earnings. (Dkt. 22 at 12).

The "benefit limitation" provision at issue in this case applies to disabilities caused in part by a mental disorder. (Dkt. 22 at 14). That provision provides in pertinent part as follows:

> **E. BENEFIT LIMITATION**.
>
> This Section applies if your Disability, *as determined by Prudential*, is caused at least in part by one of the following:
>
> (1) A mental, psychoneuristic or personality disorder.
> (2) Alcoholism.
> (3) Substance Abuse.
>
> In that case, benefits are payable for one or more periods of your Disability:

---

[2] "Sickness" is defined by the Policy as "[a]ny disorder of the body or mind of a Covered Person, but not an injury." (Dkt. , 25).

-3-

> (1) only while you are Confined in a Hospital; or
> (2) if not confined in a Hospital, for not more than 24 months during your lifetime, in the aggregate, under this Coverage and under any plan of long term disability benefits provided by the Employer.
>
> But, benefits are not payable for more than the Maximum Benefits Duration.

(Dkt. 22 at 14-15) (emphasis added).

The Policy does not contain the words "discretion," "discretionary," "interpret," or "interpretation," nor does it refer to Prudential as a plan or claims administrator. There is no mandatory language, such as the word "shall," used in connection with Prudential's decision-making ability as it relates to claims. The only references to Prudential's decision-making authority are found in the use of the words "determines" and "determined" in the following four instances: (1) "Total disability exists when *Prudential determines* that all of these [specified] conditions are met;" (2) "Partial Disability exists, . . . , when *Prudential determines* that all of these [specified] conditions are met;" (3) "*Prudential may determine* . . ." that an employee may receive vocational rehabilitation; and (4) a benefit limitation may be imposed "if your Disability, *as determined by Prudential*, is caused at least in part" by a mental disorder. (Dkt. 22 at 12 & 14).

The section of the Policy titled "Claim Rules" provides that Prudential must be given timely written notice of a claim. (Dkt. 22 at 26). With respect to proof of loss, the Policy states merely that "written proof" must be given. There is no language concerning the level, type, or sufficiency of proof required. Prudential does have the right to order a

physical examination at its own expense. (Dkt. 22 at 26). There is no definitive language associated with the right to examination regarding deficiencies in the proof that may justify an examination.

The language concerning amendments to the Policy vests the ability to amend with Prudential. The Policy states that it may be amended at any time "without the consent of the insured Employees or of anyone else with a beneficial interest in it." (Dkt. 22 at 46). "Only an officer of Prudential has the authority" to waive conditions or restrictions under the Policy or to make a change in the Policy. (Dkt. 22 at 46). A change in the Policy is not valid unless it appears in an endorsement signed by an officer of Prudential or an amendment signed by both Xerox and an officer of Prudential. (Dkt. 22 at 46).

## Standard of Review

In the absence of ERISA providing any standard of review, three standards of review have been established by the Supreme Court[3]: "(1) *de novo* where the plan does not grant the administrator discretion[;] (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest." Shaw v. Connecticut General Life Ins. Co., 353 F.3d 1276 (11th Cir. 2003) (quoting HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 993 (11th Cir. 2001), quoting Buckley v. Metro. Life, 115 F.3d 936, 939 (11th Cir. 1997)). Defendant asserts that the Policy grants the discretion to Prudential to

---

[3] See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

determine eligibility for LTD benefits, and, therefore, the arbitrary and capricious standard applies in this case.  See Paramore v. Delta Air Lines, 129 F.3d 1446, 1450 (11th Cir. 1997).  The failure to use the word "discretion" in the grant of authority to determine eligibility for LTD benefits, Defendant contends, is not fatal.  Defendant relies on three cases in which, it asserts, the word "determines" has been held sufficient to grant discretionary authority to a claims administrator.  See Anderson v. Blue Cross/Blue Shield of Ala., 907 F.2d 1072, 1076 (11th Cir. 1990);[4] Jett v. Blue Cross & Blue Shield, 890 F.2d 1137, 1139 (11th Cir. 1989); Newell v. The Prudential Ins. Co. of Amer., 725 F.Supp. 1233 (N.D. Ga. 1989), rev'd on other grounds, 904 F.2d 644 (11th Cir. 1990).[5]  Defendant has not cited a case, however, in which the exact terms of this Policy have been interpreted with respect to which of the three standards of review applies.  This Court will analyze whether the Policy grants discretion to Prudential, relying on Eleventh Circuit precedent.

---

[4]  In Anderson, the plan gave an HMO the right to determine which services and supplies were medically necessary and therefore payable in the context of what was a "reasonable and customary fee" for physicians.  The Anderson Court held that because the contract gave the HMO the right to decide which services and supplies were medically necessary, enough discretion had been granted to avoid de novo review.  Rather, the district court should have applied the heightened arbitrary and capricious standard in view of the conflict of interest generated by the HMO's use of its own employee to make the claims decisions.

[5]  In Newell, the district court construed a different aspect of an employee welfare benefit plan written by Prudential, one involving hospital care coverage.  The district court found that to the extent the plan gave Prudential the right to determine the necessary length of hospital stays and the services and supplies "needed," sufficient discretion had been delegated to invoke the deferential, arbitrary and capricious review standard.

The most recent reported opinion in which the Eleventh Circuit reviewed a district court's interpretation of whether discretionary authority was expressly granted in an LTD plan and policy is found in Shaw. In Shaw, the parties agreed that the underlying policy contained no express grant of discretion to the administrator. The Summary Plan Description (SPD), however, contained an express grant of discretion to the insurance company. The disagreement revolved around whether the terms of the SPD would take control, rather than the terms of the underlying policy. The underlying policy in Shaw, as in the Policy in the instant case, included a "no change" clause that required amendments to be made by endorsement signed by the insurance company, or by amendment signed by both the employer and the insurance company. Because the procedure for amendment had not been followed, the Shaw Court concluded that the terms of the underlying policy prevailed and no proper delegation of discretion to the insurance company to determine eligibility and to interpret the plan had occurred.

In Kirwan v. Marriott Corp., 10 F.3d 784 (11th Cir. 1994), the language in the plan fell short of an express grant of authority where the plan provided that the administrator would determine whether a benefit was properly payable, but there was no "no grant of discretion to accompany this mandatory function." Id. at 789. The failure to grant authority to the administrator to interpret the terms of the plan was fatal. The Kirwan Court reasoned that if the terms of the plan were ambiguous, express authority must be given to the administrator to construe the provisions of the plan. Additionally, the plan

failed to include any language concerning the type and level of proof to be submitted by the employee or the authority of the administrator to assess the sufficiency of proof.[6]

In Jett, relied on by Defendant, the plan expressly permitted the administrator to "make[] reasonable determinations in the administration of the [plan] (including, without limitation, determinations whether services, care, treatment, or supplies are Medically Necessary . . .) such determinations shall be final and conclusive." Id. at 1139. The descriptive booklet further provided that the administrator/insurance company "has the exclusive right to interpret the provisions of th[is] Plan, so its decision is conclusive and binding." Id. The Jett Court concluded that the language of the plan granted the administrator discretionary authority to determine eligibility for benefits and to construe its terms. Thus, in addition to the finality of the administrator's decision and the discretion to interpret the provisions, the language of the plan required "due proof" to satisfy the administrator. The inclusion of a "due proof" clause further contemplates a grant of discretion. See Curran, 2005 WL 894840, at *3.

In Paramore, the parties agreed that the plan afforded the administrator the discretion to construe the plan's terms. There, not only did the plan contain mandatory language that disability benefits "shall be determined" by the administrator, but the plan

---

[6] In an unreported opinion, the Eleventh Circuit noted these distinguishing factors in Kirwan. See Curran v. Kemper Nat'l Servs., Inc., No. 04-14097, 2005 WL 894840 (11th Cir. Mar. 16, 2005).

also expressly bestowed the authority "to interpret" the plan and decide all questions of eligibility, with its interpretation to be "final and conclusive." Id. at 1450.[7]

This Court must look to all the plan documents to ascertain whether the plan affords the administrator discretion, thereby invoking the highly deferential arbitrary and capricious standard. See Cagle v. Bruner, 112 F.3d 1510, 1517 (11th Cir. 1997) (per curiam). The Policy constitutes all the plan documents and is comprised of the Booklet, the Certificate of Coverage, and all endorsements and amendments. (Dkt. 22 at 1-51). The language of the Policy permits Prudential to "determine" benefits. It does not, however, contain language mandating that Prudential's decision is "final and conclusive" as there was in the policy in Jett and Paramore. Like the policy in Kirwan, it does not include language granting Prudential the authority to interpret the terms of the Policy, which would be necessary if any ambiguities exist.[8] Finally, the lack of the type, level,

---

[7] The Court's independent research has revealed cases in which a Prudential policy with language similar to the limitation of benefits section has been at issue. In Smorto v. 3DI Technologies, Inc., No. 6:04cv315ORL31JGG, 2005 WL 1227713 (M.D. Fla. May 23, 2005), however, the plaintiff did not contest the application of the arbitrary and capricious standard of review of what looks to be a Prudential plan with similar language in the limitation of benefits section for mental disorders. In Luton v. Prudential Ins. Co. of Amer., 88 F.Supp.2d 1364 (S.D. Fla. Mar. 23, 2000), the Prudential policy at issue contained the identical provision with respect to limiting LTD benefits for mental disorders. There, the court simply referred to a prior order in which it had already determined that the heightened arbitrary and capricious standard of review applied.

[8] In this case, the language of the very provision at issue— "is caused at least in part" by a mental disorder— lends itself to various interpretations.

and sufficiency of proof required to be submitted by the employee indicates no express grant of authority to Prudential.

In view of binding Eleventh Circuit precedent, this Court cannot ignore the dictates that the plan documents must contain an express grant of discretion to the administrator, Prudential, before employing the arbitrary and capricious standard. Finding that all the plan documents in this case when read as a whole do not convey a clear, express grant of discretionary authority to Prudential, the Court will consider *de novo* Prudential's decision to deny benefits. The *de novo* standard "offers the highest scrutiny" of the administrator's decision. See Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1137 (11th Cir. 2004). Because "no judgment/discretion was exercised in making the determination," no deference will be given to the decision to deny benefits. Id.

## Conflicting Medical Evidence

The parties agree that the issue before this Court is whether "Plaintiff was disabled, from August 17, 2001, through January 16, 2004, from performing the functions of any occupation for reasons other than those that qualify as a mental illness under the ELTD Policy."[9] (Dkt. 28 at 2). Prudential concluded that some of Plaintiff's medical conditions were caused entirely or partly by the depression precipitated by Plaintiff's daughter's suicide on August 16, 2001. Based on this premise, Prudential found that

---

[9] Plaintiff met the Social Security's criteria for total disability as is reflected by her receiving Social Security disability.

Plaintiff had exhausted the 24-month limitation as of January 16, 2004, for the mental disorder, i.e., her depression onset by her daughter's suicide. Prudential found that Plaintiff was capable of performing light-duty, sedentary work as early as March 2004. A review of the record before Prudential reveals the following medical records and opinions regarding Plaintiff's medical condition.

*Cervical Radiculopathy, Carpal Tunnel Syndrome, Intractable Headaches*

Plaintiff saw Dr. Robert Wilson, a neurologist, beginning October 1, 2002. He diagnosed Plaintiff with cervical radiculopathy and carpal tunnel syndrome. Each time he saw Plaintiff, he noted her normal mental status. On October 9, 2003, Dr. Robert Wilson opined that Plaintiff was neurologically disabled "due to her severe cervical radiculopathy, and carpal tunnel syndrome, as well as the medications she uses for pain, including Topamax and Vicodin, which may all interfere with her ability to operate at a functional level." (Dkt. 22 at 740). He completed a Physical Capacities Evaluation for Prudential and found that she was not even capable of sedentary work. (Dkt. 22 at    & 182).

*Hyperlipidemia, Pulmonary Embolism, Hypothyroidism*

Dr. Martha Price, Plaintiff's internist since 1999, wrote on August 15, 2003, that Plaintiff "has a multiplicity of serious ongoing medical conditions which preclude her from the workforce." (Dkt. 22 at 671 & 695). Dr. Price listed her conditions as severe osteoarthritis, recurrent pulmonary emboli with respiratory compromise, hypothyroidism,

and major depression. (Dkt. 22 at 671 & 695). An MRI of the cervical spine performed in September 2002 showed the following:

> 1. Mild congenital and degenerative central canal stenosis in the mid and lower cervical spine.
> 2. Small to medium size focal left paracentral disc herniation at C4-5 with mild cord deformity and encroachment upon the exiting left C5 nerve root.
> 3. Degenerative neural forminal narrowing secondary to uncovertebral osteophyte particularly on the left at C5-6 and bilaterally at C6-7.

(Dkt. 22 at 687). Thus, the medical records support a finding of a herniated disc and the cervical radiculopathy.[10]

*Chronic Fatigue Syndrome*

Dr. Lippelman saw Plaintiff beginning in 1996, at which time he felt that Plaintiff's insomnia was a factor in Plaintiff's depression, although he recognized that Plaintiff suffered from sleep apnea. He opined that Plaintiff's complaints were "primarily due to severe depression." Dr. Dory Norris, however, one of Plaintiff's treating physicians beginning in late December 2002, treated Plaintiff for recurrent immuno-deficiencies. Both depression and chronic fatigue syndrome were noted in the chart. The medical records reveal a clear diagnosis of chronic fatigue syndrome.

---

[10] Dr. Sumesh Chandra has also been treating Plaintiff since 1997 for her hypothyroidism, fatigue, frequent headaches and inability to lose weight. (Dkt. 22 at 857).

*Fibromyalgia, Lateral Epicondylitis, Osteoarthritis*

Plaintiff began seeing Dr. Joel Silverfield, an internist and rheumatologist, on May 16, 2003, for a rheumatological evaluation. (Dkt. 22 at 712-728). He found that she had multiple attachment pain syndrome (MAPS), bilateral epicondylitis, some anserine bursitis of the knees, and true degenerative arthritis of the knees. (Dkt. 22 at 714). He noted that she had a history of sleep apnea, asthma, pulmonary embolism, chronic fatigue syndrome, a pinched nerve in her neck, hypothyroidism, and "a history of depression following her child's suicide two years ago [for which] she has been on antidepressants. (Dkt. 22 at 713). On November 24, 2003, Dr. Silverfield completed a Fibromyalgia Residual Functional Capacity Questionnaire. (Dkt. 22 at 723-728). He rated her prognosis for returning to work as "poor." He noted that in addition to fibromyalgia, she suffered from chronic fatigue syndrome, morning stiffness, multiple tender points, muscle weakness, nonrestorative sleep, carpal tunnel syndrome, and depression. (Dkt. 22 at 724). On December 11, 2003, Dr. Silverfield completed a Physical Capacities Evaluation for Prudential. (Dkt. 22 at 722). He found that Plaintiff could never lift or carry anymore than five pounds. (Dkt. 22 at 722). In an eight-hour day, Plaintiff could sit only for one hour, stand only one-half hour, and walk only one-half hour. She could never bend, squat, crawl, climb, or reach.

*Sleep Apnea*

There seems to be no disagreement between Prudential and Plaintiff that she genuinely suffers from sleep apnea, which is not the result of depression.

*Prudential's Paper Review*

Prudential relied on the findings of its physician, Dr. Steven J. Feagin, board certified in internal medicine, who conducted a medical records review on June 15, 2004. Dr. Feagin concluded that Plaintiff had exhibited chronic depression and "long-standing tendencies toward somatization of her psychiatric situation and self-reported embellishment of the manifestation of the numerous actual physical problems." (Dkt. 22 at 241). Dr. Feagin also took issue with the findings regarding chronic fatigue syndrome, disputing that chronic fatigue syndrome can ever be categorized as a disability, and Plaintiff's "functional status in the absence of the psychiatric impairment." Dr. Feagin opined that Plaintiff had "grossly embellished" her physical disabilities. He made these findings without having examined or talked with Plaintiff. (Dkt. 22 at 245).

Dr. Patrick M. Foye, an assistant professor of Physical Medicine and Rehabilitation, conducted an independent medical file review on September 15, 2004, at the request of Prudential. (Dkt. 22 at 177-187). In reviewing Plaintiff's medical records, Dr. Foye noted that she had seen Dr. Max Wilson, an internist at the University of Florida, on July 14, 1998, some three years prior to the first date of disability. Dr. Max Wilson had opined that "while all of her symptoms are quite real and disturbing to her, most of them (with the exception of her sleep apnea) are primarily due to severe depression." (Dkt. 22 at 181). Dr. Foye opined that Plaintiff's "symptoms of fatigue

appear essentially related to her severe depression, rather than due to her sleep apnea or other physical conditions." (Dkt. 22 at 185). He concluded that while Plaintiff suffers from multiple physical conditions, "these conditions do <u>NOT</u> appear to have documentation of a severity of impairment to preclude sedentary or light duty work." (Dkt. 22 at 186).

In reviewing the evidence under the *de novo* standard, this Court must not give special weight to the opinions of the Plaintiff's treating physicians, even though Prudential's doctors reviewed only the medical records and interpreted them differently from her treating physicians. <u>See</u> <u>Shaw</u>, 353 F.3d at 1287 (quoting <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 123 S.Ct. 1965, 1970, 1972, 155 L.Ed. 1034 (2003)). Prudential's physician consultants who reviewed the file concluded that Plaintiff had suffered mental depression as well as the various physical conditions set forth above long before the suicide, yet she had not needed to miss work and claim disability before August 2001. It appears, however, that both Plaintiff and Prudential agree that the left-sided cervical radiculopathy does truly prevent Plaintiff from engaging in certain activities—the degree to which such condition prevents her from working either at a sedentary job or not working at all, is the dispute in this case. Prudential asserts that she is capable of holding down a sedentary job in the management arena, while she has never worked as a manager, but only as a sales representative and a teacher prior to her time at Xerox. Because this Court cannot outright reject Prudential's assessment of Plaintiff's condition based on its independent review of Plaintiff's medical records in favor of

Plaintiff's treating physicians, who found Plaintiff to be totally disabled, the Court must deny summary judgment based on the sharply conflicting issues of disputed material facts regarding the cause of Plaintiff's physical conditions and her ability to maintain a sedentary job.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment (Dkt. 25) is **DENIED**.

(2) This case shall proceed to pre-trial at the previously scheduled time before Magistrate Judge McCoun, and a non-jury trial on the trial term beginning January 2, 2006. See order at docket 13.

**DONE AND ORDERED** at Tampa, Florida, on October 17, 2005.

                        s/
                  **RICHARD A. LAZZARA**
                  **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record